| | |
|---|---|
| LYNNE AVRAM, on behalf of herself and all others similarly situated,<br><br>               **Plaintiff,**<br><br>   v.<br><br>SAMSUNG ELECTRONICS AMERICA, INC., *et al.*,<br><br>               **Defendants.** | Civ. No. 2:11-6973 (KM) |
| MARGARET LARK, on behalf of herself and all others similarly situated,<br><br>               **Plaintiff,**<br><br>   v.<br><br>SAMSUNG ELECTRONICS AMERICA, INC., *et al.*,<br><br>               **Defendants.** | Civ. No. 2:12-976 (KM)<br><br><br><br>**OPINION** |

## KEVIN MCNULTY, U.S.D.J.:

The Department of Energy (DOE) Energy Star program permits manufacturers of appliances, including refrigerators, to affix a label indicating that the appliance meets certain standards of energy efficiency. Such appliances, Plaintiffs allege, cost more to purchase, but supposedly save money in the long run by reducing electricity bills. Lynne Avram and Margaret Lark, putative class action plaintiffs in these consolidated actions, each bought refrigerator model RF26VAB, manufactured by Defendant Samsung Electronics America, Inc. ("Samsung"), from Defendant Lowe's Home Centers, Inc.

1

("Lowe's"). At the time of purchase, the refrigerators bore the Energy Star label. Sometime thereafter, however, DOE determined that this refrigerator model did not meet the Energy Star program's requirements. Avram and Lark allege that they therefore have not received what they paid for. They assert causes of action for breach of express warranty, breach of the implied warranty of merchantability, violation of the Magnuson-Moss Warranty Act, violation of the Maryland and New Jersey consumer fraud statutes, and unjust enrichment.

Now before the court are the motions of Samsung and Lowe's to dismiss each complaint. Defendants argue that the warranty claims are preempted by the Energy Policy and Conservation Act and that the Complaints' allegations are otherwise insufficient as a matter of law.

Samsung and Lowe's motions to dismiss are granted in part and denied in part. Specifically, I will dismiss (1) Avram's claim of breach of the implied warranty of merchantability against Samsung; (2) the claims of violation of the state consumer fraud statutes; and (3) the unjust enrichment causes of action against Samsung. The rest of the claims survive.

## I. BACKGROUND[1]

### A. The Energy Star Program

The Energy Policy and Conservation Act of 1975 (the "ECPA"), 42 U.S.C. § 6291, *et seq.*, created an energy conservation program for major household appliances. (Avram Compl. ¶ 12 [Civ. No. 11-6973, Docket No. 1]; Lark Compl. ¶ 12 [Civ. No. 12-973, Docket No. 1]). A few years later, the National Energy Conservation Policy Act of 1978 granted the United States Department of Energy ("DOE") the authority to establish minimum energy efficiency standards for, *inter alia,* home refrigerator-freezers. (Avram Compl. ¶ 12; Lark Compl. ¶ 12). Later, the National Appliance Energy Conservation Act of 1987 established minimum energy efficiency standards for refrigerator-freezers. (Avram Compl. ¶ 12; Lark Compl. ¶ 12).

---

[1] The allegations of the Complaints have not yet been tested by any fact finder. This discussion, as it must, assumes their truth solely for the purpose of analyzing Defendant's Rule 12(b)(6) motion. *See* pp. 6-7, *infra.*

The Energy Star program, enacted as part of the Energy Policy Act of 2005, is

> a voluntary program to identify and promote energy-efficient products and buildings in order to reduce energy consumption, improve energy security, and reduce pollution through voluntary labeling of, or other forms of communication about, products and buildings that meet the highest energy conservation standards.

42 U.S.C. § 6294a. DOE and the Environmental Protection Agency ("EPA") jointly administer the program. *Id.* In general, to earn the Energy Star label, refrigerators and freezers must be at least 20% more energy efficient than the minimum mandated by federal law. (Avram Compl. ¶ 13; Lark Compl. ¶ 13).

The Energy Star logo is an important marketing tool. It conveys a message that the purchaser can maximize his or her energy savings and help to protect the environment. (Avram Compl. ¶ 14; Lark Compl. ¶ 14). In essence, the consumer pays more to purchase an Energy Star-compliant appliance, but the appliance costs less to operate. (Avram Compl. ¶ 2; Lark Compl. ¶ 2).

### B. Avram's Refrigerator Purchase

Because Avram was concerned about the environment, when she shopped for a new refrigerator, she looked only at Energy Star models. (Avram Compl. ¶ 17). On June 26, 2009, Avram purchased her new refrigerator at a Lowe's retail store in Scottsdale, Arizona for $1,213.20 plus tax. (*Id.*). That purchase price included a substantial premium based on claims that the refrigerator was energy efficient and met the qualifications of Energy Star program. (*Id.*). Avram would not have purchased the refrigerator had she known it was not Energy Star-compliant. (*Id.*).

### C. Lark's Refrigerator Purchase

On November 1, 2009, Lark purchased the refrigerator at a Lowe's retail store in Maryland for about $2,100. (Lark Compl. ¶ 17; Lark Opp. at 2). That purchase price included a substantial premium based on claims that the refrigerator was energy efficient and met the qualifications of Energy Star program. (Lark Compl. ¶ 17).

## D. DOE Finds That the Refrigerators Do Not Meet the Energy Star Program's Requirements

On February 18, 2010, DOE alerted Samsung that its testing showed that the refrigerators did not meet the Energy Star efficiency requirements. (Avram Compl. ¶ 18; Lark Compl. ¶ 18). About three weeks later, on March 8, 2010, Samsung representatives met with DOE regarding the test results. (Avram Compl. ¶ 19; Lark Compl. ¶ 19). DOE permitted Samsung to submit its own test results. (Avram Compl. ¶¶ 19-20; Lark Compl. ¶¶ 19-20) In DOE's estimation, however, Samsung's testing failed to establish that the refrigerators met Energy Star standards. (Avram Compl. ¶ 20; Lark Compl. ¶ 20). On March 16, 2010, DOE sent Samsung a letter stating that the refrigerators had failed DOE tests for the Energy Star program and that Samsung had failed to rebut that conclusion. (Avram Compl. ¶ 21; Lark Compl. ¶ 21). DOE then referred the matter to EPA for appropriate action. (Avram Compl. ¶ 21; Lark Compl. ¶ 21). EPA and Samsung eventually entered into an informal, private agreement under which Samsung agreed to stop manufacturing or selling the refrigerators. (Avram Compl. ¶ 22).

As a result, Avram and Lark did not receive the benefit of the Energy Star bargain. They paid a price premium for what purported to be an Energy Star product but did not receive the energy savings they had paid for. (Avram Compl. ¶ 23; Lark Compl. ¶ 22).

## E. Avram and Lark File Class Action Complaints

On November 30, 2011, Avram filed a Complaint on behalf of herself and a class of similarly situated individuals. That Complaint alleges that Defendants' manufacture and sale of a refrigerator that falsely claimed to be Energy Star-compliant give rise to the following causes of action: breach of express warranty, breach of the implied warranty of merchantability, violations of Magnuson-Moss Warranty Act ("Magnuson-Moss") and the New Jersey Consumer Fraud Act ( "NJCFA"), and unjust enrichment.

On February 17, 2012, Lark filed a nearly identical class action complaint alleging the same causes of action, with one exception. Instead of a claim under the NJCFA, Lark's complaint alleges a violation of the Maryland Consumer Protection Act ("MCPA").

On June 20, 2012, then-Magistrate Judge Shipp granted Lark's motion to consolidate the two cases. Subject matter jurisdiction over these consolidated actions is predicated on three grounds. Over the federal law claim, the Court has federal question jurisdiction. 28 U.S.C. § 1331. Over the related state law claims, the Court has supplemental jurisdiction. 28 U.S.C. §§ 1367. Finally, because the Complaint alleges that there are over 100 class members, the aggregate amount in controversy exceeds $5 million, and at least one class member is diverse from the defendants,[2] the Court has diversity jurisdiction under 28 U.S.C. § 1332(d). Venue is proper because Samsung resides in the District of New Jersey, the Defendants do business throughout the District, and a substantial part of the events giving rise to the Plaintiffs' claims took place in New Jersey. 28 U.S.C. § 1391.

Prior to the consolidation order and in lieu of filing an answer, Lowe's and Samsung each moved to dismiss each complaint for failure to state a claim, pursuant to Federal Rule of Civil Procedure 12(b)(6).

## II. LEGAL STANDARDS AND BACKGROUND

### A. Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if it fails to state a claim upon which relief can be granted. The moving party, ordinarily the defendant, bears the burden of showing that no claim has been stated. *Hedges v. United States,* 404 F.3d 744, 750 (3d Cir. 2005). For purposes of a motion to dismiss, the well-pleaded factual allegations of the complaint must be taken as true, with all reasonable inferences drawn in plaintiff's favor. *Phillips v. County of Allegheny,* 515 F.3d 224, 231 (3d Cir. 2008) (established "reasonable inferences" principle not undermined by intervening Supreme Court case law).

In recent years, the United States Supreme Court has elaborated on the standards that a court is to apply in analyzing a Rule 12(b)(6) motion to dismiss, particularly in light of the pleading requirements of Federal Rule of Civil Procedure 8(a)(2). Although a complaint need not contain detailed factual

---

[2] Avram is a citizen of Arizona, Lark is a citizen of Maryland, Samsung is a Delaware corporation with a principal place of business in New Jersey, and Lowe's is incorporated and has its principal place of business in North Carolina.

allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus the factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, demonstrating that it is "plausible on its face." *See id.* at 570; *see also Umland v. PLANCO Fin. Servs., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' . . . it asks for more than a sheer possibility." *Iqbal*, 556 U.S. at 678.

The United States Court of Appeals for the Third Circuit has explicated the *Twombly/Iqbal* standard on several occasions. *See, e.g., Argueta v. U.S. Immigration & Customs Enforcement*, 643 F.3d 60, 70-73 (3d Cir. 2011); *Santiago v. Warminster Twp.*, 629 F.3d 121, 129-30 (3d Cir. 2010); *Fowler v. UPMC Shadyside*, 578 F.3d 203, 209-211 (3d Cir. 2009). The Court of Appeals recently summarized the three-step process for analyzing a Rule 12(b)(6) motion:

> To determine whether a complaint meets the pleading standard, our analysis unfolds in three steps. First, we outline the elements a plaintiff must plead to a state a claim for relief. *See [Iqbal,* 556 U.S.] at 675; *Argueta*, 643 F.3d at 73. Next, we peel away those allegations that are no more than conclusions and thus not entitled to the assumption of truth. *See Iqbal*, 556 U.S. at 679; *Argueta,* 643 F.3d at 73. Finally, we look for well-pled factual allegations, assume their veracity, and then "determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679; *Argueta*, 643 F.3d at 73. This last step is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

*Bistrian v. Levi,* 696 F.3d 352, 365 (3d Cir. 2012).

Samsung and Lowe's assert that the state consumer protection law claims sound in fraud and therefore must be pleaded with additional particularity. *See* Section III.E, *infra.* For claims of fraud, Federal Rule of Civil

Procedure 9(b) imposes a heightened pleading requirement, over and above that of Rule 8(a). Specifically, it requires that "in all averments of fraud or mistake, the circumstances constituting the fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). "Malice, intent, knowledge, and other conditions of a person's mind," however, "may be alleged generally." *Id.* That heightened pleading standard requires the plaintiff to "state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the precise misconduct with which it is charged." *Frederico v. Home Depot,* 507 F.3d 188, 200 (3d Cir. 2007) (internal quotation and citation omitted).

In general, "[t]o satisfy this heightened standard, the plaintiff must plead or allege the date, time, and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." *Id.* "Plaintiff must also allege who made the misrepresentation to whom and the general content of the misrepresentation." *Lum v. Bank of Am.,* 361 F.3d 217, 224 (3d Cir. 2004) (internal citation omitted); *In re Suprema Specialties, Inc. Sec. Litig.,* 438 F.3d 256, 276–77 (3d Cir. 2006) ("Rule 9(b) requires, at a minimum, that plaintiffs support their allegations of fraud with all of the essential factual background that would accompany the first paragraph of any newspaper story—that is, the who, what, when, where and how of the events at issue.") (internal quotation and citation omitted)).

> [Plaintiffs] need not, however, plead the "date, place or time" of the fraud, so long as they use an "alternative means of injecting precision and some measure of substantiation into their allegations of fraud." The purpose of Rule 9(b) is to provide notice of the "precise misconduct" with which defendants are charged and to prevent false or unsubstantiated charges. Courts should, however, apply the rule with some flexibility and should not require plaintiffs to plead issues that may have been concealed by the defendants.

*Rolo v. City Investing Co. Liquidating Trust,* 155 F.3d 644, 658 (3d Cir. 1998) (quoting *Seville Indus. Machinery v. Southmost Machinery,* 742 F.2d 786, 791 (3d Cir. 1984) and citing *Christidis v. First Pennsylvania Mortg. Trust,* 717 F.2d 96, 99 (3d Cir. 1983)).

## III. DISCUSSION[3]

Samsung and Lowe's have filed similar motions to dismiss each count of Avram's and Lark's Complaints. I address each claim in turn, and include a choice-of-law analysis for the state law claims.

### A. Preemption of Avram's and Lark's Warranty Claims

Avram and Lark assert warranty-based claims under Magnuson-Moss, as well as state-law causes of action for breach of express warranty and breach of the implied warranty of merchantability. Samsung and Lowe's argue that these claims (the "Warranty Claims") are preempted by the ECPA, as amended by the National Appliance Energy Conservation Act ("NAECA"). Specifically, they cite 42 U.S.C. § 6297(g), which provides that any disclosure of energy use, cost, or efficiency "required to be made" pursuant to ECPA does not create an express or implied warranty. I find that the claims are not preempted because the Energy Star program is voluntary. Use of the Energy Star logo is permitted, not "required," by the ECPA.

#### a. Preemption

"Federal preemption doctrine provides Congress with the power to preempt state legislation if it so intends." *Treasurer of New Jersey v. U.S. Dep't of Treasury*, 684 F.3d 382, 406 (3d Cir. 2012). Preemption comes in three varieties: "express preemption and two types of implied preemption, field preemption and conflict preemption." *Id.* (citing *Farina v. Nokia Inc.*, 625 F.3d 97, 115 (3d Cir. 2010)). Express preemption exists "when a federal enactment contains language that is explicit about its preemptive effect." *Treasurer of New Jersey*, 684 F.3d at 406. Here, Section 6297 of NAECA contains an express preemption provision, so the issue of whether NAECA preempts the warranty claims in this case is squarely presented. *Medtronic, Inc. v. Lohr,* 518 U.S. 476, 484 (1996).

---

[3] Avram and Lark requested permission to file a surreply brief addressing new arguments and statements requiring correction that allegedly are to be found in the Defendants' reply briefs. This District's Local Rules require leave of the Court to file a surreply. *See* L.R. 7.1(d)(6). I find that the Defendants' reply briefs do not raise new arguments or contain statements requiring correction. Therefore I do not authorize the filing of a surreply.

The Supreme Court has counseled courts considering a preemption issue to stick close to the text of the statute, while taking two presumptions into account.

First, the court must presume "that Congress does not cavalierly preempt state-law causes of action." *Medtronic,* 518 U.S. at 485. "In all preemption cases, and particularly in those in which Congress has 'legislated . . . in a field which the States have traditionally occupied' we 'start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress.'" *Id.* at 485 (quoting *Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218, 230 (1947)). Conversely, the presumption against preemption may not apply where Congress's statute applies to a field that "the States have not traditionally occupied." *Buckman Co. v. Plaintiffs' Legal Comm.,* 531 U.S. 341, 347–48 (2001).

Second, the court must presume "that the purpose of Congress is the ultimate touchstone in every pre-emption case." *Wyeth v. Levine,* 555 U.S. 555, 565 (2009) (quoting *Medtronic,* 518 U.S. at 485). And "Congress' intent is, of course, primarily discerned from the language of the pre-emption statute and the statutory framework surrounding it." *Medtronic,* 518 U.S. at 485 (quotation marks and citations omitted).

Guided by these principles, I now analyze whether Avram's and Lark's state law warranty claims are preempted by the federal statutory regime.

    i.   <u>Analysis</u>

NAECA includes a warranty preemption provision, which states:

> Any disclosure with respect to energy use, energy efficiency, or estimated annual operating cost which is required to be made under the provisions of this part shall not create an express or implied warranty under State or Federal law that such energy efficiency will be achieved or that such energy use or estimated annual operating costs will not be exceeded under conditions of actual use.

42 U.S.C. § 6297(g).

Hewing to the text of the provision, as I must, I find that Avram's and Lark's claims are not preempted. The Energy Star program is voluntary; the associated disclosures of energy efficiency are not "required to be made" by statute. 42 U.S.C. § 6294a(a) (Energy Star is "a *voluntary program* to identify and promote energy-efficient products . . . in order to reduce energy consumption, improve energy security, and reduce pollution through *voluntary labeling* of, or other forms of communication about, products and buildings that meet the highest energy conservation standards.") (emphasis added). Had Congress intended to preempt warranty claims as to all such disclosures, it could simply have stated that "no disclosure *made under* the provisions of this part creates a warranty." But it did not; it limited the preemptive effect to disclosures "*required to be made*" under the statute. I cannot assume that Congress's insertion of the words "required to be" was accidental, or that the words themselves are superfluous and meaningless.[4] Indeed, I can imagine a reason for it: Congress may have wished to create a safe harbor for standardized efficiency disclosures that, like automobile mileage figures, are useful for comparative purposes even if they seldom reflect what happens when the product is in use. But be that as it may, the statutory wording is clear.

Samsung and Lowe's argue that manufacturers *are* required to affix labels to their products disclosing their energy consumption, *see* 42 U.S.C. § 6296(a) ("Each manufacturer of a covered product [including refrigerators] . . . *shall* provide a label which meets, and is displayed in accordance with, the requirements of such rule.") (emphasis added). Of course, an appliance's energy consumption figures will determine whether it is Energy Star-eligible. But although manufacturers are required to disclose those energy consumption figures, they are not required to participate in the Energy Star program or to affix the Energy Star logo to their products. *See* 42 U.S.C. § 6294a(a) (Energy Star is a "voluntary program*"* implemented through "voluntary labeling").

Plaintiffs' claims are not based on the energy consumption disclosures, but rather on the Energy Star logo itself.[5] This circumstance factually

---

[4] Of course, if the statute contained nothing but mandatory disclosure provisions, those words could be dismissed as superfluous description. But it doesn't; it is a mix of mandatory and non-mandatory provisions.

[5] Certain of Plaintiffs' claims, it is true, could be read to include claims of inefficiency in operation, in addition to claims based on the inappropriateness of the Energy Star designation. I will not, however, dismiss valid claims that are arguably

distinguishes other decisions that have given effect to the warranty preemption provision of Section 6297. *See Jurgensen v. Felix Storch, Inc.*, Civ. No. 12-1201, 2012 WL 2354247, at *1 (S.D.N.Y. June 14, 2012) (subsequent DOE testing determined that "Energy Guide labels to the Freezers . . . "substantially understated their energy consumption."); *Gee v. Viking Range Corp.*, Civ. No. 4:07-87, 2008 WL 4416442, at *1 (N.D. Miss. Sept. 24, 2008) (claims for breach of express warranty and implied warranty of merchantability based on defect in design and energy use greater than disclosed on the label). Those cases held that breach of warranty claims based on the products' failure to live up to the manufacturers' required disclosures of energy consumption figures were preempted by NAECA. Participation in the Energy Star Program, because it is not "required," does not trigger the preemption provision.

The statutory scheme is clear. A disclosure that is "required" by Congress does not create a warranty, but one (like Energy Star) that is optional may constitute an actionable warranty. A warranty claim based on such a voluntary, non-"required" disclosure is not preempted.

## B. Breach of Express Warranty

I find that the Complaints sufficiently allege that the Energy Star logo constitutes an express warranty, which defendants breached. Any disclaimer in the user manual's Limited Warranty is ineffective; at least, it cannot be presumed effective as a matter of law for purposes of a motion to dismiss.

### a. Choice of Law

As to the state law claims, I must consider which state's law applies, and I must do so separately as to each plaintiff, each defendant, and each claim. *See Gray v. Bayer Corp.*, Civ. No. 08-4716, 2011 WL 2975768, at *5 (D.N.J. July 21, 2011) (Linares, J.) ("While it might be desirable for the sake of efficiency to settle upon one state, such as New Jersey, and apply its law in lieu of the other 49 jurisdictions, due process requires individual consideration of the choice of law issues raised by each class member's case before certification.") (quoting *Chin v. Chrysler Corp.*, 182 F.R.D. 448, 457 (D.N.J.1998)).

---

overbroad.

"[I]n a diversity action, a district court must apply the choice of law rules of the forum state to determine what law will govern the substantive issues of a case." *Warriner v. Stanton,* 475 F.3d 497, 499-500 (3d Cir. 2007) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496 (1941)). New Jersey uses the most significant relationship test, which consists of two prongs. *Maniscalco v. Brother Int'l Corp. (USA),* 793 F. Supp. 2d 696, 704 (D.N.J. 2011) *aff'd sub nom. Maniscalco v. Brother Int'l (USA) Corp.,* 709 F.3d 202 (3d Cir. 2013). First, the court must determine whether a conflict actually exists between the potentially applicable laws. *P.V. v. Camp Jaycee,* 197 N.J. 132, 144, 962 A.2d 453, 460 (2008) ("Procedurally, the first step is to determine whether an actual conflict exists. That is done by examining the substance of the potentially applicable laws to determine whether there is a distinction between them.") (internal quotations omitted). "[I]f no conflict exists, the law of the forum state applies." *Snyder v. Farnam Companies, Inc.,* 792 F. Supp. 2d 712, 717 (D.N.J. 2011) (quoting *P.V.,* 197 N.J. at 143, 962 A.2d at 453).

If a conflict exists, the court then moves to the second prong: it must determine "which state has the 'most significant relationship' to the claim at issue by weighing the factors" in the applicable section of the Restatement (Second) of Conflict of Laws. For contract actions, the applicable section is Restatement § 188. *Gilbert Spruance Co. v. Pennsylvania Mfrs. Ass'n Ins. Co.,* 134 N.J. 96, 102, 629 A.2d 885, 888 (1993).

Under New Jersey law, to state a claim for breach of express warranty, "Plaintiffs must properly allege: (1) that Defendant made an affirmation, promise or description about the product; (2) that this affirmation, promise or description became part of the basis of the bargain for the product; and (3) that the product ultimately did not conform to the affirmation, promise or description." *Snyder,* 792 F. Supp. 2d at 721 (citing N.J. Stat. Ann. § 12A:2–313) (other internal citation omitted). Arizona and North Carolina law are substantially similar. *See* Ariz. Rev. Stat. Ann. § 47-2313 (defining an express warranty as "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain" or "[a]ny description of the goods which is made part of the basis of the bargain."); N.C. Gen. Stat. Ann. § 25-2-313 (same).

The parties do not identify any significant distinction among these states' laws with respect to this issue. For the purposes of the pending motions,[6] with respect to a claim of breach of express warranty, no significant conflict exists between the laws of Arizona, North Carolina and New Jersey. Accordingly, I will apply the law of the forum state, New Jersey. *See, e.g., Snyder*, 792 F. Supp. 2d at 717.

b. <u>Analysis</u>

Avram's and Lark's allegations are straightforward: The Energy Star logo was an affirmation that the product was Energy Star compliant; they purchased the refrigerators because of the logo; and the refrigerators did not, in fact, meet the Energy Star requirements. The parties dispute, however, whether the allegations establish the first two elements of a breach of express warranty: that the seller made an affirmation or promise about the product, and that it became the basis of the bargain.

i. *Energy Star Logo as an Affirmation or Promise*

"A statement can amount to a warranty, even if unintended to be such by the seller, 'if it could fairly be understood . . . to constitute an affirmation or representation that the [product] possesse[s] a certain quality or capacity relating to future performance.'" *L.S. Heath & Son, Inc. v. AT & T Info. Sys., Inc.*, 9 F.3d 561, 570 (7th Cir. 1993) (applying New Jersey law and quoting *Gladden v. Cadillac Motor Car Div., General Motors Corp.*, 416 A.2d 394, 396, 83 N.J. 320 (1980)). "[W]hether a given statement constitutes an express warranty is normally a question of fact for the jury." *Snyder v. Farnam Companies, Inc.*, 792 F. Supp. 2d 712, 721-22 (D.N.J. 2011); *see also Union Ink Co., Inc. v. AT & T Corp.*, 352 N.J. Super. 617, 645, 801 A.2d 361 (App. Div. 2002) ("Whether the advertisements contained material misstatements of fact, or were merely

---

[6] "Applying the factors necessary to determine choice of law for a contract or quasi-contract claim" may be "a very fact-intensive inquiry," such that the analysis sometimes is more appropriate at the class certification stage. *Snyder v. Farnam Companies, Inc.*, 792 F. Supp. 2d 712, 721 (D.N.J. 2011). Nevertheless, "[s]ome choice of law issues may not require a full factual record and may be amenable to resolution on a motion to dismiss." *Harper v. LG Electronics USA, Inc.*, 595 F. Supp. 2d 486, 491 (D.N.J. 2009). This is determined issue-by-issue. *Arlandson v. Hartz Mountain Corp.*, 792 F. Supp. 2d 691, 700 (D.N.J. 2011). These Complaints, I find, contain allegations sufficient to permit a choice-of-law determination.

puffing, as alleged by defendants, presents a question to be determined by the trier of fact.").

Avram's and Lark's Complaints allege that refrigerators that carry the Energy Star logo meet the program's requirements of using 20% less energy than the minimum federal standard. (Avram Compl. ¶ 2; Lark Compl. ¶ 2). The refrigerators were sold with the logo, but subsequent DOE testing revealed that they did not meet Energy Star efficiency requirements. (Avram Compl. ¶ 1; Lark Compl. ¶ 1). The Complaints sufficiently allege that, by attaching the Energy Star label to the refrigerators, Samsung and Lowe's affirmed that the refrigerators qualified for the program. *See Taylor v. JVC Americas Corp.*, Civ. No. 07-4059, 2008 WL 2242451, at *5 (D.N.J. May 30, 2008) (warranty claim sufficiently pled by allegations that packaging said the product was a "1080p" television, but television did not accept a 1080p signal).

Defendants cite two cases in which courts held that the Energy Star logo did not support a claim of breach of express warranty. I find them distinguishable.

In *Savett v. Whirlpool Corp.*, Civ. No. 12-310, 2012 WL 3780451 (N.D. Oh. Aug. 31, 2012), the court simply found that the complaint simply failed to allege any particular statement or promise that the logo conveyed. *Id.* at *9. Here, by contrast, the Complaints allege that allege that Energy Star logo conveys that the refrigerator is at least 20% more energy efficient than the minimum federal standard.[7] *Rossi v. Whirlpool Corp.*, Civ. No. 12-125, 2013 WL 1312105 (E.D. Cal. Mar. 28, 2013) applies California law in a manner that does not square with cases from this District that apply New Jersey law. *See Hemy v. Perdue Farms, Inc.*, Civ. No. 11-888, 2013 WL 1338199, at *7, *10 (D.N.J. Mar. 31, 2013) (complaint sufficiently alleges that a "humanely raised" label would be understood by consumers to encompass the slaughtering process); *Taylor, supra,* 2008 WL 2242451 at *5.

---

[7] Avram's and Lark have, in addition, asked the court to take judicial notice of DOE survey results that show that the majority of households understand and rely on Energy Star labels when making purchasing decisions. (*See* National Awareness of Energy Star for 2011: Analysis of CEE Household Survey, Ex. C to Request for Judicial Notice at ES-1 to ES-1 [Docket No. 37-4]). Such information might provide further support of Plaintiffs' position, but is not necessary for purposes of this motion.

Applying New Jersey law, I find that the Complaints adequately allege that the Energy Star logo would be understood by consumers as an affirmation of fact or a promise regarding the energy efficiency of the refrigerators.

### ii. *Basis of the Bargain*

"Under New Jersey law, a representation is presumed to be part of the basis of the bargain 'once the buyer has become aware of the affirmation of fact or promise' and can be rebutted by 'clear affirmative proof that the buyer knew that the affirmation of fact or promise was untrue.'" *Viking Yacht Co. v. Composites One LLC*, 496 F. Supp. 2d 462, 469 (D.N.J. 2007) (quoting *Liberty Lincoln-Mercury, Inc. v. Ford Motor Co.*, 171 F.3d 818, 825 (3d Cir. 1999) (other internal quotation omitted)).

Samsung and Lowe's contend that the Complaints fail to allege that the Energy Star logo was part of the basis of the bargain. Avram, however, alleges that she had decided to purchase only a refrigerator that sported the Energy Star label. (Avram Compl. ¶ 17). While Lark did not limit her search in the same way, one can reasonably infer from her complaint that she knew the Energy Star label was on the refrigerator, understood its meaning, and paid a higher price based on it. (*See, e.g.*, Lark Compl. ¶ 17 (Lark's purchase of the refrigerator "included a substantial price premium due to its supposed energy efficiency and ENERGY STAR® qualification.")). Defendants did not – indeed, at this procedural stage, probably could not -- rebut the allegations by proving that Avram and Lark were not in fact misled. That is not to say that such a rebuttal could not eventually be made, but, at this stage, I find that Avram and Lark have stated a claim for breach of express warranty.

### iii. *Disclaimer via Samsung's Limited Warranty*

Only one point remains: whether Samsung successfully disclaimed the warranty. Samsung and Lowe's argue that, by offering a Limited Warranty that expressly disclaims all others, Samsung effectively negated any warranty based on the Energy Star logo.

Both the UCC and New Jersey law allow manufacturers to limit their liability (other than for personal injury) through disclaimers. *Alloway v. Gen. Marine Indus., L.P.*, 149 N.J. 620, 630, 695 A.2d 264, 269 (1997); *see* N.J. Stat. Ann. § 12A:2-316. Such a disclaimer must be so clear and conspicuous that a

15

reasonable purchaser would notice it. *Gladden v. Cadillac Motor Car Div.*, 83 N.J. 320, 331, 416 A. 2d 394, 400 (1980).

The refrigerator's manual states that "Energy star labeled this product could save your energy costs." [*sic*] (User Manual at 2, Ex. A to O'Hara Dec. [Docket No. 6-2]).[8] The Limited Warranty in the manual "covers manufacturing defects in materials and workmanship encountered in normal, noncommercial use of the product." (*Id.* at 42). The Limited Warranty contains an express disclaimer: "THERE ARE NO EXPRESS WARRANTIES OTHER THAN THOSE LISTED AND DESCRIBED ABOVE . . . . SAMSUNG SHALL NOT BE LIABLE FOR . . . FAILURE TO REALIZE SAVINGS OR OTHER BENEFITS . . . ." (*Id.* at 43).

"[U]nder U.C.C. § 2–316, a warranty disclaimer inconsistent with an express warranty is inoperative." *L.S. Heath & Son, Inc. v. AT & T Info. Sys., Inc.*, 9 F.3d 561, 570 (7th Cir. 1993) (citing N.J. Stat. Ann. § 12A:2–316); *Gladden*, 83 N.J. at 330, 416 A.2d at 399. Because I have found that the Energy Star logo constitutes an express warranty, this attempt to disclaim it would be ineffective.[9] I note, too, the potential for unfairness if an express warranty is displayed to the purchaser when he parts with his money at the store, but the disclaimer appears at page 42 of a manual sealed inside the product's packaging. At best, such an alleged disclaimer would present an issue of fact. Either way, the motion to dismiss must be denied.

## C. Breach of the Implied Warranty of Merchantability

Samsung and Lowe's argue that the implied warranty of merchantability claims should be dismissed because neither complaint adequately alleges that the refrigerators failed in their "ordinary purpose," which is to keep food cold. Avram and Lark respond that this appliance was sold as a high-efficiency refrigerator with a more particular ordinary purpose: to keep food cold *in*

---

[8] The Limited Warranty is not referred to in either complaint and therefore would not ordinarily be considered as part of a motion to dismiss. I nevertheless consider it, but find it ineffective as a disclaimer.

[9] The Limited Warranty covers parts and labor on the refrigerator generally for one year, and on the sealed refrigeration system for five years. (*Id.* at 42). I do not reach the issue of whether these claims, if brought under the Limited Warranty, would be untimely.

*compliance with Energy Star efficiency standards.* As to each plaintiff's claim against each defendant, I must determine I must first determine which state's law applies. I conclude that New Jersey law governs both plaintiffs' implied warranty claims against Lowe's, as well as Lark's claim against Samsung. Avram's claim against Samsung, however, is governed by Arizona law.

### 1. *Avram's implied warranty claim against Samsung*

Avram, a citizen of Arizona, asserts a state law implied warranty of merchantability claim against Samsung, a citizen of New Jersey, in a New Jersey federal court.

I must first determine which law applies – New Jersey's or Arizona's. The first step is to see whether these two states' laws conflict. *P.V. v. Camp Jaycee*, 197 N.J. 132, 144, 962 A.2d 453, 460 (2008). They do. For an implied warranty of merchantability claim, Arizona requires contractual privity, but New Jersey does not. *Compare Flory v. Silvercrest Indus.*, 129 Ariz. 574, 579, 633 P.2d 383, 388 (1981) ("economic losses are not recoverable for breach of implied warranty in the absence of privity of contract") *with Spring Motors Distributors, Inc. v. Ford Motor Co.*, 98 N.J. 555, 582, 489 A.2d 660, 674 (1985) ("We conclude that the absence of privity between a remote supplier and an ultimate purchaser should not preclude the extension to the purchaser of the supplier's warranties made to the manufacturer.") The conflict matters because Avram (who purchased the refrigerator from Lowe's) is not in privity with Samsung (the remote manufacturer of the refrigerator).

Having established that a conflict exists, the Court must determine "which state has the 'most significant relationship' to the claim at issue by weighing the factors" in Section 188 of the Restatement (Second) of Conflict of Laws. *Gilbert Spruance Co. v. Pennsylvania Mfrs. Ass'n Ins. Co.*, 134 N.J. 96, 102, 629 A.2d 885, 888 (1993). Those factors are: "(1) the place of contracting, (2) the place of negotiation of the contract, (3) the place of performance, (4) the location of the subject matter of the contract, and (5) the domicile, residence, nationality, place of incorporation and place of business of the parties." *Spence-Parker v. Delaware River & Bay Auth.*, 656 F. Supp. 2d 488, 498-99 (D.N.J. 2009) (citing Restatement (Second) of Conflicts § 188(2)).

Those factors point to the conclusion that Arizona law applies to Avram's claim against Samsung. Avram shopped for, purchased, installed and used the refrigerator in Arizona, where she lives. Those facts imply that the first four

factors favor Arizona. The last factor – the residence and place of incorporation of the parties – is more or less neutral, in that one party is a citizen of Arizona, and the other of New Jersey (the co-plaintiff and co-defendant are located elsewhere). Accordingly, Arizona law will apply to Avram's claim of breach of the implied warranty of merchantability as against Samsung.

Avram's implied warranty claim against Samsung falls afoul of Arizona's requirement of privity of contract. *See Flory, supra*. Privity does not exist because Avram purchased her refrigerator from Lowe's, not Samsung. (Avram Compl. ¶ 17). Accordingly, her breach of warranty claim against Samsung, the remote manufacturer, must be dismissed. *See Haugland v. Winnebago Indus.*, 327 F. Supp. 2d 1092, 1097 (D. Ariz. 2004) (because "privity is absent in this case, Plaintiff's implied warranty of merchantability claims . . . will be dismissed."); *Yee v. Nat'l Gypsum Co.*, Civ. No. 09-8189, 2010 WL 2572976, at *2 (D. Ariz. June 22, 2010) (dismissing implied warranty claim against manufacturer because plaintiff "cannot [establish privity] because he bought the drywall not from [the manufacturer], but from Lowe's.").

### 2. *Lark's implied warranty claim against Samsung and both Plaintiffs' implied warranty claims against Lowe's*

The remaining implied warranty of merchantability claims – Lark's claim against Samsung and both plaintiffs' claims against Lowe's – present "false conflicts." They are therefore governed by the law of the forum state, New Jersey.

Lark, a citizen of Maryland, sues Samsung, a citizen of New Jersey, for breach of the implied warranty of merchantability. For purposes of this claim, there is no significant difference between Maryland and New Jersey law. *Compare Pulte Home Corp. v. Parex, Inc.*, 174 Md. App. 681, 755, 923 A.2d 971, 1013 (2007) ("In an action based on breach of warranty it is necessary for the plaintiff to show the existence of the warranty, the fact that the warranty was broken and that the breach of warranty was the proximate cause of the loss sustained."), *with Marcus v. BMW of N. Am.*, LLC, 687 F.3d 583, 601 n.8 (3d Cir. 2012) ("To state a claim for breach of the implied warranty of merchantability, a plaintiff must allege (1) that a merchant sold goods, (2) which were not 'merchantable' at the time of sale, (3) injury and damages to the plaintiff or its property, (4) which were was caused proximately and in fact by the defective nature of the goods, and (5) notice to the seller of injury." (internal

18

citation and quotation omitted)). Accordingly, New Jersey law will govern Lark's claim against Samsung for breach of the implied warranty of merchantability. *See Snyder v. Farnam Companies, Inc.*, 792 F. Supp. 2d 712, 717 (D.N.J. 2011).

As to Avram's and Lark's implied warranty claims against Lowe's, North Carolina law is added to the mix; Lowe's is incorporated and has its principal place of business in North Carolina. Unlike New Jersey, but like Arizona, North Carolina requires privity. *Compare Spring Motors Distributors, Inc. v. Ford Motor Co.*, 98 N.J. 555, 582, 489 A.2d 660, 674 (1985) ("We conclude that the absence of privity between a remote supplier and an ultimate purchaser should not preclude the extension to the purchaser of the supplier's warranties made to the manufacturer."), *and Ace Am. Ins. Co. v. Grand Banks Yachts, Ltd.*, 587 F. Supp. 2d 697, 705 (D. Md. 2008) ("Maryland has expressly abolished the requirement for contractual privity to sue for breach of the implied warranty of merchantability" (citing Md. Code Ann., Com. Law § 2–314(1)(b) ("Any previous requirement of privity is abolished as between the buyer and the seller in any action brought by the buyer."))), *with Kelly v. Georgia-Pac. LLC*, 671 F. Supp. 2d 785, 796 (E.D.N.C. 2009) ("Under North Carolina common law, privity of contract is generally required to assert an implied warranty claim.").

With respect to claims against Lowe's, however, this is a "false conflict," wherein "the laws of the two jurisdictions would produce the same result on the particular issue presented." *Williams v. Stone*, 109 F.3d 890, 893 (3d Cir. 1997). Avram and Lark bought their refrigerators from Lowe's and are in privity with Lowe's; lack of privity is therefore a non-issue. Accordingly, I will disregard the nominal conflict with North Carolina law; New Jersey law will govern Avram's and Lark's claims against Lowe's for breach of the implied warranty of merchantability.

"[T]he UCC, as adopted by New Jersey, specifically states that an implied warranty of merchantability ensures that goods sold are 'fit for the ordinary purposes for which such goods are used.'" *Arlandson v. Hartz Mountain Corp.*, 792 F. Supp. 2d 691, 706 (D.N.J. 2011) (quoting N.J. Stat. Ann. § 12A:2–314(f)). It "does not impose a general requirement that goods precisely fulfill the expectation of the buyer. Instead, it provides for a minimum level of quality." *Lieberson v. Johnson & Johnson Consumer Companies, Inc.*, 865 F. Supp. 2d 529, 542 (D.N.J. 2011) (internal quotations and citations omitted). Put a different way, "merchantability is defined as the product sold 'should be of the general kind described and reasonably fit for the *general* purpose for which it

should have been sold.'" *Id.* (quoting *Adams v. Peter Tramontin Motor Sales, Inc.,* 42 N.J. Super. 313, 321, 126 A.2d 358 (App. Div. 1956) (emphasis added) (other internal quotation and citation omitted). Generally, a court will find a good to be unfit for its ordinary purpose "when [it] can identify one of three general types of defects: manufacturing defects, design defects, and failure to give the buyer proper instructions with respect to the goods." *Lieberson,* 865 F. Supp. 2d at 542.

But what is the general, "ordinary purpose" of these refrigerators? Self-evidently, they are designed to keep perishables cold, and no one contends that they failed to do that. Avram and Lark, however, stress that these refrigerators were sold as high-efficiency appliances that would keep food cold in accordance with Energy Star efficiency standards. And they did allegedly fail to do that.

An impairment of the "ordinary purpose" of a product is one that is central to the product's value or function. *Compare Zabriskie Chevrolet, Inc. v. Smith,* 99 N.J. Super. 441, 450, 240 A.2d 195, 200 (Law Div. 1968) (where the car the plaintiff purchased broke down less than a mile from the dealership, the car was "substantially defective" and in breach of the implied warranty of merchantability), *with Green v. Green Mountain Coffee Roasters, Inc.,* 279 F.R.D. 275, 283 (D.N.J. 2011) (rejecting implied warranty of merchantability claim that a single-cup brewing system, although it brewed beverages, failed to brew precisely one cup), *and Lieberson,* 865 F. Supp. 2d at 543 (finding no breach of the implied warranty of merchantability where soap and lotion did not help babies sleep, as advertised, because the soap was "clearly manufactured for the purpose of washing and moisturizing babies' skin" and it did do that).

Based on the allegations in the Complaints, I find that the Energy Star label puts the refrigerators closer to the car in *Zabriskie* than to the coffeemaker in *Green* or the soap in *Lieberson.* Soporific qualities and precise portion control do not, so far as I am aware, embody any settled consumer expectation as to baby soap or coffee makers. (Avram Compl. ¶ 1; Lark Compl. ¶ 1). An Energy Star sticker, by contrast, stands for a level of efficiency, defined in relation to statutory standards, for which consumers allegedly are willing to pay a premium. (Avram Compl. ¶ 2; Lark Compl. ¶ 2). The eventual presentation of evidence might or might not establish Plaintiffs' claim; I cannot say, however, that they have failed to state one.

Accordingly, I dismiss Avram's claim of breach of the implied warranty of merchantability as against Samsung under Arizona law. The remaining implied warranty claims, analyzed under New Jersey law, meet federal pleading requirements and will not be dismissed.

### D. Magnuson-Moss Warranty Act Claims

Magnuson-Moss is "a remedial statute designed to protect the purchasers of consumer goods from deceptive warranty practices." *Miller v. Willow Creek Homes, Inc.,* 249 F.3d 629, 630 (7th Cir. 2001) (citation omitted). It provides for a private right of action whenever when a purchaser is "damaged by the failure of a . . . warrantor . . . to comply with any obligation under [Magnuson-Moss], or under a written warranty . . . ." 15 U.S.C. § 2310(d)(1). Logically, "Magnuson–Moss claims based on breaches of express and implied warranties under state law depend upon those state law claims." *Cooper v. Samsung Elec. Am., Inc.,* Civ. No. 07–3853, 2008 WL 4513924, at *6 (D.N.J. Sept. 30, 2008) (citing *In re Ford Motor Co. Ignition Switch Prods. Liability Litig.,* 19 F. Supp. 2d 263, 267 (D.N.J. 1998)).

Samsung and Lowe's argue that Plaintiffs' Magnuson-Moss claims are based on invalid state-law warranty claims, and therefore should be dismissed. As discussed in Sections III.B and C, above, however, all but one of the state-law causes of action for breach of express and implied warranties are legally sufficient and they will not be dismissed. Consequently, the Magnuson-Moss claim survives as well.

In addition, the Magnuson-Moss claims meet federal pleading standards. A "written warranty" is:

(A) any written affirmation of fact or written promise made in connection with the sale of a consumer product by a supplier to a buyer which relates to the nature of the material or workmanship and affirms or promises that such material or workmanship is defect free or will meet a specified level of performance over a specified period of time . . .

which . . . becomes part of the basis of the bargain between a supplier and a buyer for purposes other than resale of such product.

15 U.S.C. § 2301(6).

The allegations of the Complaint easily would support an inference that the refrigerators are consumer products and the Defendants are suppliers within the meaning of the statute.[10] As discussed in Section III.B, above, the Complaints adequately allege that the Energy Star logo constitutes a written affirmation of fact relating to the refrigerators' performance that became part of the basis of the bargain.

The Complaints state claims under Magnuson-Moss. Samsung and Lowe's motions to dismiss the Magnuson-Moss claims are denied.

### E. State Consumer Protection Statute Claims

#### a. Avram's New Jersey Consumer Fraud Act Claim

Avram brings a claim under the New Jersey Consumer Fraud Act against Samsung only. I find that the law of Arizona applies, and that the NJCFA claim must therefore be dismissed as a matter of law.[11]

Step one of the choice-of-law analysis requires the Court to determine if an actual conflict exists between New Jersey and Arizona law. As both parties acknowledge, there is a conflict. The Arizona Consumer Fraud Act (the "ACFA") (1) requires reliance, *Kuehn v. Stanley*, 208 Ariz. 124, 129, 91 P.3d 346, 351 (Ct. App. 2004) ("An injury occurs when a consumer relies, even unreasonably, on false or misrepresented information."); (2) has a one-year statute of limitations, *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1045 (9th Cir. 2011); (3) does not permit treble damages and (4) allows only the attorney general to collect attorneys' fees. Ariz. Rev. Stat. Ann. § 44-1534.

---

[10] "Consumer product" is defined as any tangible personal property which is distributed in commerce and which is normally used for personal, family, or household purposes (including any such property intended to be attached to or installed in any real property without regard to whether it is so attached or installed). 15 U.S.C. § 2301(1). A "supplier" is any person engaged in the business of making a consumer product directly or indirectly available to consumers. 15 U.S.C. § 2301(4).

[11] Should New Jersey law apply, Samsung argues, the NJCFA claim should be dismissed because it does not state an ascertainable loss nor are its allegations pleaded with particularity. Because I find that Arizona law applies, I do not reach those issues.

New Jersey, by contrast, (1) does not require reliance, *Lieberson v. Johnson & Johnson Consumer Companies, Inc.*, 865 F. Supp. 2d 529, 538 (D.N.J. 2011) (stating elements of NJCFA claim, which do not include reliance); (2) has a six-year statute of limitations, *DiIorio v. Structural Stone & Brick Co., Inc.*, 368 N.J. Super. 134, 142, 845 A.2d 658, 663 (App. Div. 2004); (3) imposes treble damages and (4) provides for an award of attorneys' fees. N.J. Stat. Ann. § 56:8-19.

In short, the ACFA and the NJCFA conflict. Accordingly, I move to step two to see which state has the most significant relationship to the claim, using the factors outlined in the applicable subsection of Section 148 of the Restatement (Second) of Conflict of Laws. *Maniscalco v. Brother Int'l Corp. (USA)*, 793 F. Supp. 2d 696, 704 (D.N.J. 2011) (citing *P.V. v. Camp Jaycee*, 197 N.J. 132, 143-44, 962 A.2d 453, 460 (2008).

The subsection of the Restatement that applies to this case is Section 148(2),[12] which states:

> (2) When the plaintiff's action in reliance took place in whole or in part in a state other than that where the false representations were made, the forum will consider such of the following contacts,

---

[12]   Restatement Section 148(1) states:

> (1) When the plaintiff has suffered pecuniary harm on account of his reliance on the defendant's false representations and when the plaintiff's action in reliance took place in the state where the false representations were made and received, the local law of this state determines the rights and liabilities of the parties unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the occurrence and the parties, in which event the local law of the other state will be applied.

I find that Section 148(1) does not apply, because the representations and the reliance did not both occur in any single state. Any representations were made in New Jersey, but received in Arizona, where Avram allegedly relied upon them. To the extent that the applicability of Section 148(1) is suggested by *Agostino v. Quest Diagnostics, Inc.*, 256 F.R.D. 437 (D.N.J. 2009), I find the case distinguishable. *See Maniscalco*, 793 F. Supp. 2d 696, 707 (distinguishing *Agostino* because the *Agostino* defendant "intended the fraudulent bills be read by each plaintiff in his or her home state," while the facts in *Maniscalco* did "not concern the direct targeting of plaintiffs whose identities and addresses [were] known."). There is no evidence that Samsung or Lowe's directly and knowingly targeted Avram or anyone else.

among others, as may be present in the particular case in determining the state which, with respect to the particular issue, has the most significant relationship to the occurrence and the parties:

> (a) the place, or places, where the plaintiff acted in reliance upon the defendant's representations,
>
> (b) the place where the plaintiff received the representations,
>
> (c) the place where the defendant made the representations,
>
> (d) the domicile, residence, nationality, place of incorporation and place of business of the parties,
>
> (e) the place where a tangible thing which is the subject of the transaction between the parties was situated at the time, and
>
> (f) the place where the plaintiff is to render performance under a contract which he has been induced to enter by the false representations of the defendant.

Restatement (Second) of Conflict of Laws § 148(2) (1971).

Simple factor-counting is not the whole of the analysis, but it is a starting point. Four of the Section 148(2) factors favor the application of Arizona law, one favors New Jersey, and one is neutral. Specifically, the first two and last two favor Arizona law: in Arizona, Avram received the representations and acted in reliance on them in purchasing and using the refrigerator. The third factor – that Samsung made the representations in New Jersey – favors New Jersey law. The remaining factor – the residence, place of incorporation, and place of business of the parties – is evenly balanced. In sum, the 148(2) factors point to Arizona law.

Courts are also admonished, however, not merely to count the 148(2) factors, but to weigh them in light of the principles stated in Section 6 of the Restatement. *Camp Jaycee*, 197 N.J. at 147, 962 A.2d at 463; *see also* Restatement § 148 cmt. B. Those policies are:

> (a) the needs of the interstate and international systems,

24

(b) the relevant policies of the forum,

(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

(d) the protection of justified expectations,

(e) the basic policies underlying the particular field of law,

(f) certainty, predictability and uniformity of result, and

(g) ease in the determination and application of the law to be applied.

Restatement (Second) of Conflict of Laws § 6. "Reduced to their essence, the § 6 principles are: (1) the interests of interstate comity; (2) the interests of the parties; (3) the interests underlying the field of tort law; (4) the interests of judicial administration; and (5) the competing interests of the states." *Camp Jaycee,* 197 N.J. at 147, 962 A.2d at 463.

Avram's Arizona residence weighs heavily in favor of that state's law. "The interests of interstate comity favor applying the law of a state where the injured party resides." *Montich v. Miele USA, Inc.,* 849 F. Supp. 2d 439, 450 (D.N.J. 2012) (citing *Fink v. Ricoh Corp.,* 365 N.J. Super. 520, 585, 839 A.2d 942 (Law Div. 2003) (stating this factor "clearly require[s] application of the law of any potential claimant's state of residence because application of any other state's law would frustrate the domiciliary state's legislative policies . . . .")).

The second factor, the interests of the parties, looks to the law the parties reasonably expected would apply. *See Fu v. Fu,* 160 N.J. 108, 123, 733 A.2d 1133 (1999); *see also* Restatement § 6, comment g ("Generally speaking, it would be unfair and improper to hold a person liable under the local law of one state when he had justifiably molded his conduct to conform to the requirements of another state."). It is given more weight in the context of a voluntary commercial transaction, like this one, in which the parties can be said to have "molded" their conduct, as opposed to, say, a personal-injury tort case. *See Agostino,* 256 F.R.D. at 463 ("the interests of the parties 'is of extreme importance in the field of contracts,' but it 'plays little or no part in a choice-of-law question in the field of torts.'" (quoting *Fu v. Fu,* 160 N.J. 108, 123, 733

A.2d 1133, 1141 (2009) (internal quotation omitted)). Avram purchased, took delivery of, and used the refrigerator in Arizona, and Samsung surely knew its products would be sold there; the application of Arizona law defeats no legitimate expectation of either party. Conversely, I see no indication that Avram knew where Samsung was headquartered, or that she ever dreamed that her refrigerator purchase bore any relation to New Jersey or its laws.

The third factor focuses on which law would further the "fundamental goals of tort law," which are deterrence and compensation. *Id.* Taken literally, this factor might imply that the more plaintiff-favorable law always wins. But the determination is more systematic and respectful of state policy judgments. True, NJCFA is probably more generous to plaintiffs and stern with manufacturers than is the ACFA. But "[s]imply because New Jersey has struck a particular balance between consumer protection and the promotion of business within its borders does not suggest that its interest in deterrence should displace the policy goals of its fellow states. Those states have instead struck their own legislative balances, awarding compensation based on differing standards of, *inter alia*, intent, causation, reliance, and damages." *Gray v. Bayer Corp.*, Civ. No. 08-4716, 2011 WL 2975768, at *5 (D.N.J. July 21, 2011). Avram had no contacts with New Jersey, but substantial ones with Arizona. She directly purchased the refrigerator from a third party with no ties to New Jersey. Application of ACFA would further Arizona's interest in compensating purchasers for harms they may have suffered. New Jersey's interest, however, in compensating out-of-state consumers is minimal, and the state's contacts with this litigation have come only because Samsung's headquarters happen to be located there. I thus see "little reason to conclude that New Jersey's deterrent interest with respect to one party should be elevated above" Arizona's. *See id.* In other words, this factor is at best neutral, but tends to lean in favor of Arizona.

The fourth factor is neutral. There is no indication that the interests of judicial administration favor either state.

Fifth, the states' competing interests also tilt to Arizona. "[E]very state has an interest in having its law applied to its resident claimants." *Montich v. Miele USA, Inc.*, 849 F. Supp. 2d 439, 450 (internal quotation and citation omitted). Arizona, the state where the plaintiff "claimant" resides, and where the bulk of the contacts occurred, has the stronger interest in protecting its consumers from harm, regulating incursions by foreign corporations, and

determining the scope of recovery for its citizens. *See id.* (citing *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 422 (2003) ("[E]ach State may make its own reasoned judgment about what conduct is permitted or proscribed within its borders.")).

In short, I apply New Jersey conflicts law and find that the Restatement § 148(2) factors, interpreted in light of the policies stated in § 6, strongly point to the application of Arizona law. Other judges in this District, analyzing analogous cases, have come to a similar conclusion. *See, e.g., Agostino*, 256 F.R.D. at 463 (Chesler, J.); *Gray v. Bayer Corp.*, Civ. No. 08-4716, 2011 WL 2975768, at *5 (D.N.J. July 21, 2011) (Linares, J.).

Avram, however, cites *In re Mercedes-Benz Tele Aid Contract Litigation*, 257 F.R.D. 46 (D.N.J. 2009) (Debevoise, J.), which applied the NJCFA to a claim that a New Jersey corporation had made in-state misrepresentations affecting an out-of-state plaintiff. There, Judge Debevoise found that, under the circumstances, the actions emanating from New Jersey and this State's strong interest in regulating its corporations outweighed other, contrary factors. *See id.* at 64-70. The facts of *Mercedes-Benz* are distinguishable in my view. There, the defendant's extensive, possibly nefarious steps in New Jersey might have lent greater weight to this State's interest in regulating domestic corporations. *Id.* at 51-54, 66. More to the point, no subsequent case has followed *Mercedes-Benz*, and many have found that its reasoning went too far. *See, e.g., Montich v. Miele USA, Inc.*, 849 F. Supp. 2d 439, 449-50 (D.N.J. 2012) (collecting criticism of, and distinguishing, *Mercedes-Benz*, and finding, "[b]ased on these facts and the weight of the precedent in this Circuit," that California law applied where "Plaintiff purchased the washing machine from a store in California, took delivery of the machine in California, used the machine at her home in California, and allegedly suffered injury in California."); *In re Vioxx Products Liab. Litig.*, 861 F. Supp. 2d 756, 765 (E.D. La. 2012) (declining to apply the NJCFA and stating "only one factor seems to weigh in favor of the application of New Jersey law. This was enough for the *Mercedes–Benz* court to apply New Jersey law to out-of-state litigants, but as noted above that opinion is an outlier. Under similar facts, many more cases have applied the consumer fraud law of plaintiff's home state."); *Gray v. Bayer Corp.*, 2011 WL at *6 ("While this Court agrees with the court in *Mercedes–Benz* that due consideration must be given to New Jersey's deterrent interest in enforcing the NJCFA, the Court concludes that, given the substantial contacts between Plaintiff's claims and the states where One–A–Day WeightSmart was purchased, to disregard the

individual laws of those states in favor of a blanket application of New Jersey law would ignore their strong compensatory interest in this matter and would threaten to upset the balance of our federal system. The Court thus follows the weight of authority counseling against the application of the NJCFA to out-of-state consumers."); *Maloney v. Microsoft Corp.*, No. 09–2047, 2011 WL 5864064, at *9, 2011 U.S. Dist. LEXIS 134841, at *28 (D.N.J. Nov. 21, 2011) ("This Court is similarly unsatisfied with the justifications provided in the *Mercedes–Benz* decision."); *Agostino v. Quest Diagnostics Inc.*, No. 04–4362, 2010 WL 5392688, *9, 2010 U.S. Dist. LEXIS 135310, *28 (D.N.J. Dec. 22, 2010) ("Parting ways, however, with Judge Debevoise's assessment in Mercedes, this Court does not consider that New Jersey's interest in deterring fraudulent conduct perpetrated by domestic companies necessarily trumps the interest of the victim's home state.").

Like the judges in the cases cited above, I find that New Jersey has the less significant relationship with Avram's consumer fraud claim. "[A]ccepting all of the facts as pleaded by Plaintiffs as true, the factors weigh in favor of applying the law" of Arizona. *Arlandson v. Hartz Mountain Corp.*, 792 F. Supp. 2d 691, 709 (D.N.J. 2011). Avram received and relied upon the Energy Star logo in Arizona, she purchased the refrigerator there, the refrigerator is located there, and performance of the contract occurred there. These factors outweigh the single fact that Samsung is located in New Jersey. *See, e.g., Maniscalco v. Brother Int'l Corp.*, 793 F. Supp. 2d 696, 707 (D.N.J. 2011) ("Moreover, even if I were to find that BIC had made a decision to conceal in New Jersey, such a finding would not alter my determination that California and South Carolina have the most significant relationship to Plaintiffs' fraud claims; indeed, as discussed above, a majority of the courts in this district have determined that unlawful conduct emanating from New Jersey does not necessarily supersede the numerous contacts a plaintiff had with his home state."); *Arlandson*, 792 F. Supp. 2d at 709 ("The factual record is complete enough at this time to show that, accepting all of the facts as pleaded by Plaintiffs as true, the factors weigh in favor of applying the law of Plaintiffs' home states. Plaintiffs received and relied upon the alleged misrepresentations in their home states, the product is located in the Plaintiffs' home states, and the performance of the contract was rendered in Plaintiffs' home states. Balancing all these factors in favor of Plaintiffs' home states against the fact that Defendants' headquarters are located in New Jersey, the Court finds that the law of each Plaintiff's home state has the "most significant relationship" to Plaintiffs' consumer fraud action."); *Cooper v. Samsung Elecs. Am., Inc.*, 374 Fed. App'x 250, 255 (3d Cir.

2010) (noting at the motion to dismiss stage that a consumer fraud claim bears the most significant relationship with the state in which the product was "marketed, purchased, and used"); *Nikolin v. Samsung Elecs. Am., Inc.*, Civ. No. 10–1456, 2010 WL 4116997, at *3 (D.N.J. Oct. 18, 2010) (finding at the motion to dismiss stage that the law of each plaintiff's home state has the most significant relationship, as "mere allegations that the unlawful conduct emanated from New Jersey did not outweigh the substantial ties to plaintiffs' home states"); *In re Philips/Magnavox TV Litig.*, Civ. No. 09–3072, 2010 WL 3522787, at *9–10 (D.N.J. Sept. 1, 2010) (analyzing the Section 148(2) factors at the motion to dismiss stage and finding that the law of each plaintiff's home state applies); *Warma Witter Kreisler, Inc. v. Samsung Elecs. Am., Inc.*, Civ. No. 08–5380, 2010 WL 1424014, at *1–2 (D.N.J. Apr. 8, 2010) (finding at motion to dismiss stage that allegation that product was designed in New Jersey "does not outweigh other, more significant, ties" to plaintiff's home state).

Accordingly, the applicable law is that of Arizona. Of necessity, then, Avram's claim under the New Jersey Consumer Fraud Act is dismissed.

### b. Lark's MCPA Claim

Samsung and Lowe's argue that Lark's MCPA cause of action must be dismissed because she does not allege reliance on any misrepresentation or actual loss.

#### i. *Choice of Law*

The parties agree that Maryland law applies to Lark's claim. I concur. There is a conflict between the NJCFA and the MCPA:

> New Jersey's CFA does not require scienter as an element of proof with respect to affirmative acts by defendants, whereas the Maryland Consumer Protection Act (CPA) requires scienter. Further, actual conflicts exist regarding remedies. New Jersey's CFA entitles a successful claimant to treble damages plus attorney's fees and costs, whereas Maryland's CPA does not provide for treble damages and does not provide for mandatory attorney's fees, but allows for their award in the court's discretion. It is thus abundantly clear that actual conflicts exist, thus requiring an analysis of the second prong.

29

*Margulies v. Chase Manhattan Mortgage Corp.*, A-4087-03T3, 2005 WL 2923580 (N.J. Super. Ct. App. Div. Nov. 7, 2005) (internal citations omitted).

Under that second prong, I must determine which state has the more significant relationship to the consumer fraud issue by examining the Restatement (Second) of Conflict of Laws factors that apply to fraud actions, found in Section 148. *Maniscalco v. Brother Int'l Corp. (USA)*, 793 F. Supp. 2d 696, 704 (D.N.J. 2011) *aff'd sub nom. Maniscalco v. Brother Int'l (USA) Corp.*, 709 F.3d 202 (3d Cir. 2013) (quoting *P.V. v. Camp Jaycee*, 197 N.J. 132, 136, 962 A.2d 453 (2008)); *Agostino v. Quest Diagnostics Inc.*, 256 F.R.D. 437, 463-64 (D.N.J. 2009). As with Avram, Section 148(1) does not apply because Lark's purchase and use of the refrigerator took place in Maryland, and the alleged false representations were made in New Jersey. Instead, I must look at the factors in Section 148(2).

On balance, these factors point to Maryland as having the most significant relationship to the claim at issue. The first two factors favor Maryland because Lark received and acted in reliance on the representation – the Energy Star logo – in Maryland. The last two factors also support Maryland because Lark purchased and used the refrigerator in Maryland. The third factor, the location where the representation was made, points to New Jersey. The fourth factor, the residence and place of incorporation and business of the parties, is balanced.

In these circumstances, ample case law establishes that the factors, both in number and weight, favor Maryland. *See Maniscalco*, 793 F. Supp. 2d at 708 ("A majority of courts in this District have held that the mere fact that a company is headquartered in New Jersey will "not supersede the numerous contacts with the consumer's home state" for purposes of determining which state has the most significant relationship under Restatement § 148(2)."); *Cooper v. Samsung Electronics America, Inc.*, 374 Fed. App'x 250, 255 (3d Cir. 2010) (upholding a District Court's refusal to apply the NJCFA where plaintiff, an Arizona resident, learned of, purchased and used a Samsung television in Arizona and where New Jersey's only connection to the matter was the fact that Samsung's headquarters were located in New Jersey); *Nikolin v. Samsung Electronics America, Inc.*, Civ. No. 10–1456, 2010 WL 4116997, at *4 (D.N.J. Oct. 18, 2010) (collecting cases and holding that even where a plaintiff has alleged that "unlawful conduct emanated from New Jersey," such contact does not "outweigh the substantial ties to plaintiff's home states based on other

factors under § 148(2).”); *Warma Witter Kreisler, Inc. v. Samsung Elecs. Am., Inc,* Civ. No. 08–5380, 2010 WL 1424014, at *4 (D.N.J. Apr. 8, 2010) (holding that an “allegation that [S]amsung designed the product’s operation in New Jersey does not outweigh the other, more significant, ties to Illinois.”); *Knox v. Samsung Electronics America, Inc.,* Civ. No. 08–4308, 2009 WL 1810728, at *4 (D.N.J. June 25, 2009) (applying Georgia’s consumer fraud law where “the consumer contacts . . . all occurred in Georgia” and noting that despite Samsung’s headquarters and the alleged wrongdoing occurring in New Jersey, “it is not clear . . . that New Jersey intended out-of-state consumers to engage in end runs around local law in order to avail themselves of collective and class remedies that those states deny.”). I will apply the law of Maryland, the state with the more significant contacts.

    ii.  *Analysis*

I therefore analyze Lark’s claim against Lowe’s under the Maryland Consumer Protection Act. The MCPA prohibits any “unfair or deceptive trade practice” in “[t]he sale . . . of any consumer goods.” Md. Code Ann., Com. Law § 13–303(1). The MCPA defines “unfair or deceptive” trade practices to include “false . . . or misleading oral or written statement[s] . . . or other representations ... [that have] the capacity, tendency, or effect of deceiving or misleading consumers.” *Id.* § 13–301. Consumers “may bring an action to recover for injury or loss sustained . . . as the result of” such a misrepresentation. *Id.* § 13–408(a).

A consumer bringing a private action under MCPA, § 13–408, must allege (1) an unfair or deceptive practice or misrepresentation that (2) was relied upon, and (3) caused actual injury. *See Lloyd v. Gen. Motors Corp.,* 397 Md. 108, 143, 916 A.2d 257, 277 (2007); *Philip Morris Inc. v. Angeletti,* 358 Md. 689, 752 A.2d 200, 235 (2000). “A consumer relies on a misrepresentation when the misrepresentation substantially induces the consumer’s choice.” *Stewart v. Bierman,* 859 F. Supp. 2d 754, 768-69 (D. Md. 2012) (quoting *Bank of America v. Jill P. Mitchell Living Trust,* 822 F.Supp.2d 505, 532 (D. Md. 2011)).

Lark’s Complaint does not sufficiently allege that the Energy Star logo substantially induced her to purchase the refrigerator. It does not say, for instance, that she decided to purchase the refrigerator because of its Energy Star qualification. Nor does it allege more generally that she had limited her search to Energy Star-qualified refrigerators. She asserts that, absent the

Energy Star logo, she would not have purchased the refrigerator "on the same terms." Because Lark's allegations of reliance are somewhat vague and conclusory, they "are not entitled to the assumption of truth." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012). I find that Lark's MCPA claim is inadequately pleaded and I will dismiss it.[13]

### F. Unjust Enrichment

Samsung and Lowe's have moved to dismiss Avram's and Lark's unjust enrichment claims because (1) unjust enrichment is superfluous based on the presence of other tort claims; (2) neither Avram nor Lark can allege that they expected to receive remuneration from Samsung or Lowe's; and (3) because Avram and Lark purchased the refrigerators from Lowe's, neither Plaintiff conferred a benefit directly on Samsung.

Unjust enrichment is a shared feature of many states' common law. For unjust enrichment claims, many courts have found that there is no actual conflict between different states' laws. See *In re Mercedes–Benz Tele Aid Contract Litig.*, 257 F.R.D. 46, 58 (D.N.J. 2009) (finding that any differences under the laws of the various states are "not material and do not create actual conflict"); *Agostino v. Quest Diagnostics Inc.*, 256 F.R.D. 437, 464 (D.N.J. 2009) (concluding that "there are no actual conflicts among the laws of unjust enrichment"); *Powers v. Lycoming Engines*, 245 F.R.D. 226, 231 (E.D.Pa. 2007) (examining the unjust enrichment laws of the 50 states and concluding that, "[a]lthough there are numerous permutations of the elements of the cause of action in the various states, there are few real differences"). I see no significant

---

[13] On the other hand, I reject Samsung and Lowe's argument that Lark failed to allege actual loss. "A complaint adequately pleads loss, for instance, when it points to some amount that it would 'take to remedy the loss [the plaintiff] incurred as a result of the respondents' alleged deceptive trade practices.'" *Jones v. Koons Auto., Inc.*, 752 F. Supp. 2d 670, 684 (D.Md. 2010) (quoting *Lloyd*, 397 Md. at 150, 916 A.2d 257). Here, Lark has alleged that she paid a premium for the refrigerator and paid higher electricity bills because the refrigerator was not Energy Star-compliant. This suffices to survive a motion to dismiss. *See Dwoskin v. Bank of Am., N.A.*, 850 F. Supp. 2d 557, 570 (D.Md. 2012) (holding that actual loss prong of MCPA claim was properly alleged by plaintiffs' claim that they "suffered damages from paying a higher interest rate than they otherwise would have been charged.").

conflicts between the unjust enrichment law of New Jersey, Arizona, North Carolina, and Maryland.[14] Therefore, I will apply New Jersey law.

Avram and Lark allege that they each conferred an benefit on Samsung and Lowe's by purchasing refrigerators that were not in fact Energy Star-compliant. (Avram Compl. ¶ 57; Lark Compl. ¶ 56). Samsung and Lowe's collected these revenues for what was advertised as an Energy Star-qualified refrigerator, when, in fact, the refrigerators did not meet Energy Star requirements. (Avram Compl. ¶ 58; Lark Compl. ¶ 57). As a result, Plaintiffs paid a price premium for a product that did not deliver promised energy

---

[14] "[T]o claim unjust enrichment" under New Jersey law, "a plaintiff must allege that (1) at plaintiff's expense (2) defendant received benefit (3) under circumstances that would make it unjust for defendant to retain benefit without paying for it." *Snyder v. Farnam Companies, Inc.*, 792 F. Supp. 2d 712, 723-24 (D.N.J. 2011).

"A claim of unjust enrichment under Arizona law has five elements: '(1) an enrichment, (2) an impoverishment, (3) a connection between the enrichment and impoverishment, (4) the absence of justification for the enrichment and impoverishment, and (5) the absence of a remedy provided by law.'" *R. Prasad Indus. v. Flat Irons Envtl. Solutions Corp.*, Civ. No. 12-8261, 2013 WL 2217831, at *12 (D. Ariz. May 20, 2013) (quoting *Freeman v. Sorchych*, 226 Ariz. 242, 251, 245 P.3d 927, 936 (Ct. App. 2011)); *see also Cooper v. Samsung Electronics Am., Inc.*, Civ. No. 07-3853, 2008 WL 4513924, at *9 (D.N.J. Sept. 30, 2008) (applying New Jersey law after finding no conflict between unjust enrichment law of Arizona and New Jersey).

"The Court of Appeals of Maryland has defined unjust enrichment as constituting three elements:

'1. A benefit conferred upon the defendant by the plaintiff;

2. An appreciation or knowledge by the defendant of the benefit; and

3. The acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without the payment of its value.'"

*Sensormatic Sec. Corp. v. Sensormatic Electronics Corp.*, 249 F. Supp. 2d 703, 708 (D. Md. 2003) (quoting *County Comm'rs v. J. Roland Dashiell & Sons, Inc.*, 358 Md. 83, 95 n. 7, 747 A.2d 600, 607 n. 7 (2000)).

North Carolina law provides that "[i]n order to state a claim for unjust enrichment, the plaintiffs allegations must set forth that a benefit was conferred on the defendant, that the defendant accepted the benefit, and that the benefit was not gratuitous." *Jackson v. Carolina Hardwood Co.*, 120 N.C.App. 870, 872, 463 S.E.2d 571, 573 (1995) (citing *Booe v. Shadrick*, 322 N.C. 567, 570, 369 S.E.2d 554, 556 (1988)).

savings. (Avram Compl. ¶ 58; Lark Compl. ¶ 57). I believe the Complaints adequately allege each element of an unjust enrichment claim, with one exception.

The requirement that a plaintiff must confer a benefit on the defendant "has been interpreted by New Jersey courts as a requirement that 'the plaintiff allege a sufficiently direct relationship with the defendant to support the claim.'" *Snyder v. Farnam Companies, Inc.*, 792 F. Supp. 2d 712, 724 (D.N.J. 2011) (quoting *Nelson v. Xacta 3000 Inc.*, Civ. No. 08–5426, 2009 WL 4119176, at *3 (D.N.J. Nov. 24, 2009) (citing *Maniscalco v. Brother Int'l Corp.*, 627 F. Supp. 2d 494, 505–06 (D.N.J. 2009))); *see also Cooper v. Samsung Elec.*, Civ. No. 07–3853, 2008 WL 4513924, at *10 (D.N.J. Sept. 29, 2008) (dismissing an unjust enrichment claim where consumer's purchase was through a retailer, as there was no relationship conferring any direct benefit on the manufacturer). "When consumers purchase a product from a third party, they confer a benefit on that third party, not on the manufacturer." *Snyder*, 792 F. Supp. 2d at 724 (citing cases).

Avram and Lark purchased the refrigerators from Lowe's, not Samsung. Therefore, they did not confer a sufficiently direct benefit on Samsung. Accordingly, their unjust enrichment claims against Samsung must be dismissed.[15]

The claims against Lowe's, however, will remain. It is true that unjust enrichment often turns out to be superfluous in light of other causes of action – *i.e.*, that it is only a contractual breach or the commission of a tort that makes the enrichment "unjust." Nevertheless, to dismiss the claim on that basis would be premature at this point.[16] Lowe's motion to dismiss this count is denied.

---

[15] Avram and Lark note that a similar unjust enrichment claim in *Palmeri v. LG Electronics USA, Inc.*, another consumer products suit, was not dismissed. Civ. No. 07-5706, 2008 WL 2945985 (D.N.J. July 30, 2008). In that case, the defendants did not make, nor did the court address, the argument that the plaintiff-purchaser did not confer a benefit on the manufacturer, as opposed to the retailer, giving it little force here.

[16] I say "at this point" because a motion to dismiss is directed to plaintiff's pleading, and the unjust enrichment claim is pleaded in the alternative, as the federal rules permit. Fed. R. Civ. P. 8(d)(2) ("A party may set out two or more statements of a

## IV.  CONCLUSION

For the reasons stated above, Samsung and Lowe's Motions to Dismiss are **GRANTED IN PART** and **DENIED IN PART**. Specifically the Motions to Dismiss are

1. **GRANTED** as to (1) Avram's cause of action against Samsung for breach of the implied warranty of merchantability; (2) Avram's and Lark's claims under the NJCFA and MCPA, respectively; and (3) Avram's and Lark's unjust enrichment claims against Samsung only.

2. **DENIED** as to all remaining claims in both Complaints.

An appropriate order follows.

_____
KEVIN MCNULTY, U.S.D.J.

Date: July 11, 2013

---

claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones."). *See Palmieri,* 2008 WL 2945985 at *7 ("unjust enrichment is, by its nature, an alternative remedy to contract and tort remedies....It is inherent in a claim for unjust enrichment that it is pled in the alternative to a claim for recovery on the contract.").